UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELISABETH HABY,<br>Plaintiff,<br>v.<br>GREENSKY, LLC,<br>Defendants. | Case No.: 24-cv-0164-BJC-MMP<br>**ORDER:**<br>**(1) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,**<br>**(2) DENYING PLAINTIFF'S MOTION TO STRIKE AS MOOT, AND**<br>**(3) DENYING DEFENDANT'S MOTION TO STRIKE DECLARATIONS**<br>**[ECF No. 62, 64, 68]** |

Pending before the Court is Defendant Greensky LLC's Motion for Summary Judgment. ECF No. 62. Plaintiff Elisabeth Haby ("Plaintiff") filed a Motion to Strike Testimony, ECF No. 64, and Defendant also filed a Motion to Strike Declarations. ECF No. 68. The parties have filed oppositions and replies. The matter is submitted on the briefs without oral argument. *See* Civ. L. R. 7.1(d)(1). For the reasons stated below, Defendant's Motion to Strike Declarations is **DENIED**, and Defendant's Motion for

Summary Judgment is **DENIED**. Plaintiff's Motion to Strike Testimony is **DENIED** as moot.

## I. FACTUAL BACKGROUND

In April 2022, Plaintiff sought a spa treatment from Revive Salon and Spa. ECF No. 67-1 at 2. Plaintiff obtained a loan from GreenSky with a credit limit of $6,000. *Id.* at 3. Plaintiff authorized a transaction to Revive Salon and Spa for services rendered in the amount of $4,800. *Id.* The loan was made pursuant to a promotion in which no interest would be charged if the loan proceeds were fully repaid within 12 months. *Id.*

At some point, Plaintiff activated the GreenSky account's auto pay feature, setting a future automatic payment to Defendant on the loan and selected "statement balance" as the withdrawal amount. *Id.* The parties, however, dispute the meaning of "statement balance." Plaintiff contends that "the terms of the loan provided for monthly payments and to the extent that the online system showed the statement balance to be the entire balance owed at the time, it was false and misleading." *Id.* Defendants, by contrast, argue that the "statement balance" was a reference to the full balance of the loan. *Id.* Accordingly, on April 26, 2022, GreenSky automatically withdrew $4,800 from Plaintiff's bank account, representing the full amount of the loan. *Id.* Plaintiff brought this to GreenSky's attention and GreenSky issued a refund check to Plaintiff in the amount of $4,800. ECF No. 1 at 4; ECF No 67-1 at 4. Thereafter, Defendant began debiting Plaintiff's bank account in the amount of $480 per month as Plaintiff requested. ECF No. 67-1 at 4.

On June 16, 2022, Plaintiff contacted Defendant and asserted that she did not receive the $4,800 refund check she had requested. *Id.* Defendant then sent a second check to Plaintiff in the amount of $4,800. *Id.* at 5. When the second check was sent, Defendant's representative did not void the first check, so there were two checks in the amount of $4,800 that remained outstanding. *Id.* In October 2023, Plaintiff contacted Defendant to complain that she had not received either of the two checks that Defendant issues. *Id.* at 6. Defendant informed Plaintiff that the second check has been cashed, and Plaintiff then acknowledged that she remembered cashing the check. *Id.* at 6-7.

Critical to note, at some point, there were two outstanding checks to Plaintiff in the amount of $4,800. *Id.* at 5. Defendant contends that, as a result of the two outstanding checks, Plaintiff had a loan balance of $9,600.[1] *Id.* Defendant, therefore continued monthly debits of Plaintiff's bank account after the $4,800 had been fully repaid. *Id.*

In November 2023, Defendant received a credit bureau dispute initiated by Plaintiff that disputed the credit reporting on Plaintiff's account with Defendant. *Id.* at 7. Plaintiff's complaint was that the credit reports stated that she has borrowed approximately $9,600 (the amount of the two refund checks sent by Defendant) rather than the $4,800 that was originally owed, and therefore there was still an outstanding balance on her account.

After receiving Plaintiff's dispute, Defendant instructed its employee, Marquios Rossner, to conduct an investigation on Plaintiff's account. *Id.* Rossner conducted the investigation on December 7, 2023. *Id.* at 8. In conducting the investigation, Rosser reviewed the transaction history and balance information in Defendant's CORE credit notes, then Rosser compared this information to the Automated Credit Dispute Verification form submitted by credit reporting agencies. *Id.*

That is the extent to which the parties agree. The parties differ on the other parts of Rossner's investigation and the subsequent resolution of the account. According to Plaintiff, on November 28, 2023, Greensky credited $4,800 to her account. *Id.* at 10. On December 4, 2023, Defendant refunded the full amount of Plaintiff's payments that were in excess of $4,800. *Id.* On December 7, 2023, Rossner conducted his investigation. *Id.* at 9. During his deposition, he testified that he "discovered that a refund of the $4,800 had occurred, but verified the information as accurate anyway because "[the] system updates automatically." *Id.* at 8. Despite these actions, as of January 9, 2024, Plaintiff's credit reports continued to reflect an outstanding balance of $3,636. *Id.* at 10.

Defendant's version differs. According to Defendant, Rossner conducted the

---

[1] Plaintiff disputes this calculation, arguing that she never owed $9,600. *Id.*

investigation, and based on its results, Defendant reported to the credit reporting agencies that the credit report was accurate. *Id.* at 9. Defendant contends that "[w]ithin several weeks of this," it discovered that the first $4,800 check issued to Plaintiff had not been cancelled, which caused Plaintiff's account to reflect a $9,600 balance. *Id.* After Defendant discovered it had never stopped payment on the first $4,800 check, Defendant cancelled that check in December 2023. *Id.* at 10. Defendant then claims to have promptly refunded the full amount of Plaintiff's payments that were in excess of $4,800. *Id.* Defendant further maintains to have updated Plaintiff's credit report status to show that her account was paid in full and her remaining balance was zero. *Id.*

On January 23, 2024, Plaintiff filed the Complaint in this Court against GreenSky, LLC, Equifax Information Services, LLC, Experian Information Solutions, Inc., and Trans Union, LLC. ECF No. 1. On July 22, 2024, Plaintiff and Defendants Experian, Trans Union, and Equifax filed a joint motion to dismiss the claims against only those defendants, ECF No. 28, which the Court granted. ECF No. 29.

On June 20, 2025, Defendant GreenSky filed a motion for summary judgment. ECF No. 62. Plaintiff filed a response, ECF No. 67, and Defendant filed a reply, ECF No. 69. On July 11, 2025, Plaintiff also filed a motion to strike testimony, ECF No. 64, to which Defendant filed a response, ECF No. 70. On July 18, 2025, Defendant filed a motion to strike the declaration of Elisabeth Haby and Teresa Haby, ECF No. 68., and Plaintiff filed a response. ECF No. 69.

## II. LEGAL STANDARD

### A. Motion to Strike

Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing of those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Generally, motions to strike are disfavored and are "not granted unless it is clear that the matter to be stricken

could have no possible bearing on the subject matter of the litigation." *LeDuc v. Kentucky Central Life Ins. Co.*, 814 F.Supp. 820, 830 (N.D. Cal. 1992).

**B. Motion for Summary Judgment**

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322–23.

If the moving party fails to discharge this initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). If the moving party meets the initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elect. Indus. Co., Ltd. v Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

The court must draw all inferences from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587. "Credibility

determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

"[T]he district cour]t may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). The court is not obligated "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995)).

## III. DISCUSSION

### A. Defendant's Motions to Strike

Under Rule 56, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). However, the rule "does not automatically dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier deposition testimony . . . rather the district court must make a factual determination that the contradiction was actually a 'sham.'" *Id.* at 266–67.

Here, Defendant moves to strike the declarations of Plaintiff Elizabeth Haby and her mother, Teresa Haby, arguing that both contain statements that contradict Plaintiff's pleadings and established facts in the case. Defendant identifies four alleged contradictions. The Court finds none sufficient to warrant striking either declaration.

First, Defendant contends that Teresa Haby's declaration improperly claims she observed Plaintiff experiencing credit-related distress in 2022, despite Plaintiff alleging in her Complaint that she did not become aware of the alleged credit-reporting issues until October 2023. ECF No. 68 at 2. Defendant's argument mischaracterizes Plaintiff's Complaint. Plaintiff alleges that "on or about April 26, 2022 GreenSky withdrew the

entirety of the $4,800 at once from Plaintiff's bank account without Plaintiff's consent. Such a large sum caused Plaintiff's account to be overdrawn." ECF No. 1 at 4. Plaintiff further alleges that in October 2023, she learned that Defendant reported on her credit that she borrowed above her credit limit. *Id.* at 5. Thus, the Complaint identifies two separate events: (1) a financial problem involving the $4,800 withdrawal in 2022 and (2) a credit-reporting issue that Plaintiff discovered in 2023. Teresa Haby's statement that she observed Plaintiff "having problems in 2022" is consistent with the Complaint's allegation that Plaintiff experienced financial difficulties related to GreenSky in 2022. Accordingly, the Court finds no direct contradiction between Teresa Haby's declaration and Plaintiff's Complaint. Therefore, the Court declines to strike the declaration on this basis.

Second, Defendant argues that Plaintiff's declaration improperly characterizes Defendant's conduct as having "stolen" $4,800 from her. ECF No. 68 at 3. Specifically, Plaintiff states in her declaration, "[w]hen I discovered that GreenSky had been stealing $480 from me monthly for a while I was shocked." ECF No. 67-3 at 2. She further states that "[a]fter I found out that GreenSky had been stealing money from me, it would take me hours to fall asleep." Id. In moving to strike the declaration, Defendant argues that the record establishes that Plaintiff authorized a $4,800 automatic payment, Defendant refunded the payment after Plaintiff disputed the amount, and Defendant thereafter collected the $480 monthly payments requested by Plaintiff. ECF No. 68 at 3.

To the extent Plaintiff uses the term "stealing" as a legal characterization of Defendant's conduct, the Court disregards that characterization. *See Persian Gulf Inc. v. BP W. Coast Prods. LLC*, 632 F. Supp. 3d 1108, 1131 (S.D. Cal. 2022) (holding that "objections regarding improper legal conclusions . . . are unnecessary because the Court only considers facts contained in declarations, not legal conclusions or argumentative statements."). However, the use of the term "stealing" does not render the entirety of Plaintiff's declaration inadmissible. *Id.* ("Where a paragraph containing an improper legal conclusion is otherwise bookended by admissible statements, as is often the case here, the Court has considered the admissible factual evidence but disregarded the improper legal

conclusions and argumentative statements.") Plaintiff's statements regarding the amounts Defendant withdrew from her account, the duration of those withdrawals, and her reaction upon learning of them concern underlying facts within her personal knowledge. Accordingly, the Court disregards Plaintiff's characterization of Defendant's conduct as "stealing," but considers the admissible factual portions of her declaration.

Defendant's next argument concerns paragraphs 18 and 21 of Plaintiff's declaration, in which Plaintiff describes emails she received from GreenSky. Plaintiff states, in relevant part, that "[w]henever I received an email from GreenSky saying I have to pay this debt, I would get angered and anxious again to the point that it would affect my sleep again and it would again take me hours to fall asleep." ECF No. 67-3 at 3. Plaintiff also states that "[a]ttached . . . is a true and accurate copy of GreenSky's email to me on May 15, 2025 still demanding payment from me on this debt." *Id.* at 4. In moving to strike, Defendant argues that Plaintiff's account was paid in full and closed by December 2023; therefore, there was no debt to be collected. ECF No. 68 at 4. Instead, Defendant contends that the emails were sent because Plaintiff had not turned off the automatic withdrawal function of her account. *Id.*

The Court finds that this Plaintiff's declaration is supported by the Complaint. Plaintiff alleged in the Complaint that "GreenSky violated 15 U.S.C. § 1692e by using false, deceptive, and misleading representations in connection with the collection of Plaintiff's alleged debt." ECF No. 1 at 12. Plaintiff's declaration is consistent with that allegation because it describes communications that Plaintiff understood to demand payment of the debt. Whether GreenSky's emails were actually communications made in connection with the collection of a debt is a disputed issue that goes to the merits of Plaintiff's claim. Accordingly, the Court declines to strike the challenged portions of Plaintiff's declaration.

Finally, Defendant takes issue with paragraph nine of Plaintiff's declaration, where Plaintiff states, "[s]tarting when I was in high school, I began caring about my credit. In college, I actively began building my credit and . . . maintained good credit. I care deeply

about the accuracy of my credit and what is being reported on it." ECF No. 67-3 at 2. Defendant moves to strike this statement, arguing that in the Complaint, Plaintiff did not specifically allege that she began caring for her credit in high school and that she cares about the accuracy of her credit report. ECF No. 68 at 4.

Defendant's argument is unavailing. Plaintiff's illustration of how much she cared about her credit score does not contradict the Complaint. Although Plaintiff's description might be self-serving, the Ninth Circuit has previously noted that "declarations are often self-serving, and this is properly so because the party submitting it would use the declaration to support his or her position." *Nigro v. Sears*, Roebuck & Co., 784 F.3d 495, 497 (9th Cir. 2015). Therefore, the Court declines to strike paragraph nine of Plaintiff's declaration.

In sum, Defendant has not shown that either declaration contradicts Plaintiff's Complaint. To the extent the declarations contain legal conclusions, the Court will disregard those portions. Accordingly, Defendant's Motion to Strike Declarations is **DENIED**.

**B. Motion for Summary Judgment**

1. Private Right of Action Under the FCRA

In 1970, Congress enacted the Fair Credit Reporting Act ("FCRA") "to ensure accurate reporting about the 'credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.'" *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1250 (9th Cir. 2022) (quoting 15 U.S.C. § 1681(a)(2)). "Originally, the FCRA established duties for consumer reporting agencies and users of consumer reports, but did not address the requirements for furnishers of information." *Pirouzian v. SLM Corp.*, 396 F.Supp.2d 1124, 1127 (S.D.Cal., 2005). However, in 1996, Congress passed the Consumer Credit Reporting Reform Act, which amended the FCRA by adding 15 U.S.C. § 1681s-2 and imposing duties on furnishers of information. *Id.*

Section 1681s–2 delineates two categories of responsibilities on furnishers.[2] Under Subsection (a), furnishers have a duty "to provide accurate information" to consumer reporting agencies (CRAs). 15 U.S.C. § 1681s–2(a)(3). Under Subsection (b), furnishers have a duty, "upon notice of dispute" from a consumer reporting agency ("CRA"), to investigate the disputed information, review relevant information provided by the CRA, report the results of the investigation, and, where appropriate, modify, delete, or permanently block the reporting of inaccurate or unverifiable information. 15 U.S.C. § 1681s-2(b)(1)(A)–(E). This duty arises "when a person who furnished information to a CRA receives notice from the CRA that the consumer disputes the information." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009).

The same year that Congress passed the FCRA, the California Legislature passed the California Consumer Credit Reporting Agencies Act ("CCRAA"), which "governed credit rating reports that included consumer credit record and standing reports." *Parsonage v. Wal-Mart Assocs., Inc.*, 118 Cal. App. 5th 399, 412 (2026), review denied (Apr. 29, 2026). The Act includes Section 1785.25, which "prohibits a person from 'furnish[ing] information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate.'" *Hussey-Head v. World Sav. & Loan Assn.*, 111 Cal. App. 4th 773, 780 (2003), *as modified* (Aug. 27, 2003) (quoting § 1785.25, subd. (a)).

Defendant argues that Plaintiff's FCRA claim fails because there is no private right of action for violations of § 1681s-2(a). ECF No. 62 at 10. Defendant further argues that "the FCRA expressly preempts all state statutory and common law causes of action against furnishers of credit information." *Id.* at 18. Therefore, Defendant avers that Plaintiff cannot maintain a private claim under the CCRAA. *Id.*

---

[2] "The most common . . . furnishers of information are credit card issuers, auto dealers, department and grocery stores, lenders, utilities, insurers, collection agencies, and government agencies." H.R.Rep. No. 108–263, at 24 (2003).

Plaintiff responds that Defendant's argument is immaterial because Plaintiff has properly asserted her FCRA claim under § 1681s-2(b), not § 1681s-2(a). ECF No. 67 at 10. Plaintiff maintains that she may pursue her claim under the CCRAA, pointing out that the Ninth Circuit has previously held that the FCRA expressly exempts Cal. Civ. Code § 1785.25(a) from preemption. *Id.* at 10-11.

The Court agrees with Plaintiff. First, Plaintiff asserted her private right to action under § 1681s-2(b). *See* ECF No. 1 at 6, 7, 9. Second, Plaintiff may maintain a private right to action under Subsection (b). *Gorman*, 584 F.3d at 1154 ("The FCRA expressly creates a private right of action for willful or negligent noncompliance with its requirements . . . However, § 1681s–2 limits this private right of action to claims arising under Subsection (b)) (citations and quotations omitted).

Furthermore, Subsection (b) is implicated here because Plaintiff notified the credit reporting agencies of a dispute concerning the accuracy of the information GreenSky furnished regarding her account, and GreenSky thereafter received notice of that dispute. See ECF No. 67-1 at 7. Specifically, Plaintiff disputed the reporting that she had borrowed approximately $9,600, reflecting the combined amount of the two $4,800 refund checks issued by GreenSky, rather than the $4,800 she originally borrowed. *Id.* Under § 1681s-2(b)(1), upon receiving notice of the dispute from the credit reporting agencies, GreenSky was required to conduct an investigation, review the relevant information provided by the credit reporting agency, report the results of its investigation, and, where appropriate, modify, delete, or permanently block the reporting of information that was inaccurate or could not be verified. 15 U.S.C. § 1681s-2(b)(1)(A)–(E).

Nor is Plaintiff's parallel claim under California Civil Code § 1785.25(a) preempted by the FCRA. *Gorman*, 584 F.3d at 1169 (holding that "the FCRA's preemption provision, expressly exempts [1785.25(a)] . . . from its general exclusion of state law claims on matters governed by § 1681s-2."). Thus, Plaintiff may pursue both her federal claim under § 1681s-2(b) and her state-law claim under § 1785.25(a). Accordingly, the Court concludes that Plaintiff may maintain a private right of action under § 1681s-2(b) and DENIES

Defendant's motion for summary judgment on this issue.

2. <u>FCRA and CCRAA</u>

"Because the Credit Reporting Act is substantially based on the Federal Fair Credit Reporting Act ... judicial interpretation of the federal provisions is persuasive authority and entitled to substantial weight when interpreting the California provisions." *Olson v. Six Rivers Nat'l Bank*, 3 Cal. Rptr. 3d 301, 309 (Cal. Ct. App. 2003). The Court "operate[s] under the assumption that California courts would interpret the FCRA and CCRAA consistently." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010). Because the parties brief the FRCA and CCRAA claims together, the Court likewise addresses them together.

To succeed on her FCRA claim, Plaintiff must prove: "(1) Defendant is a 'furnisher'; (2) Plaintiff notified the CRA that Plaintiff disputed the reporting as inaccurate; (3) the CRA notified the furnisher of the alleged inaccurate information of the dispute; (4) the reporting was in fact inaccurate; and (5) Defendant failed to conduct the investigation required by § 1681s-2(b)(1)." *Gorman*, 584 F.3d at 1155–57. Here, the parties' do not dispute the first, second, and third elements. The parties dispute the fourth and fifth elements, with the primary dispute concerning the fifth element – whether Defendant conducted a reasonable investigation. ECF No. 62 at 11; ECF No. 67 at 13. The Court, therefore, turns to whether Defendant conducted a reasonable investigation under both the FCRA and CCRAA.

*a. Reasonableness of Defendant's Investigation*

To determine whether a furnisher's investigation was reasonable, "[t]he pertinent question is . . . whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute." *Gorman*, 584 F.3d at 1157 (citation omitted). "[A]n "investigation" requires an inquiry likely to turn up information about the underlying facts and positions of the parties, not a cursory or sloppy review of the dispute." *Id.* at 1155. The Ninth Circuit has also

emphasized that "summary judgment is generally an inappropriate way to decide questions of reasonableness because 'the jury's unique competence in applying the 'reasonable man''' standard is thought ordinarily to preclude summary judgment." *Gorman*, 584 F.3d at 1157 (quoting *In re Software Toolworks Inc.*, 50 F.3d 615, 621 (9th Cir. 1994)).

A furnisher's investigation may not be reasonable when it merely relies on its own records without adequately addressing the substance of the consumer's dispute. For example, in *Lara v. Experian Information Solutions, Inc.*, 625 F. Supp. 3d 1062 (S.D. Cal. 2022), the plaintiff alleged that a mortgage account was fraudulently opened in his name through identity theft. *Id.* The mortgage lender reviewed its own loan-application file and concluded that the account was legitimate. *Id.* at 1073. The Court denied summary judgment, noting that the defendant had not presented evidence that its investigation included any research beyond its own file, even though the plaintiff's dispute challenged the validity of the underlying loan documents themselves. *Id.*

Defendant argues that it conducted a reasonable investigation of Plaintiff's dispute. ECF No. 62 at 11. Defendant's employee, Marquios Rosser, reviewed the relevant transaction and balance records and concluded that the reported balance was accurate. *Id.* Defendant further argues that Plaintiff challenges only the result of the investigation, which does not establish that the investigation itself was unreasonable. *Id.* at 12.

Plaintiff argues that Defendant's investigation was unreasonable because it merely compared the database information reported by the credit bureaus with the same information in Defendant's own records, without meaningfully investigating the substance of Plaintiff's dispute. ECF No. 67 at 14. Plaintiff contends that this amounted to "rubberstamping" Defendant's existing records rather than conducting the careful inquiry required under the FCRA. *Id.* at 15. Plaintiff further argues that Defendant knew or should have known the reported balance was inaccurate because its records showed that the account balance was zero, yet Defendant still verified the information as accurate. *Id.* at 16. Thus, Plaintiff argues that whether Defendant's investigation was reasonable presents a factual question for the jury and precludes summary judgment.

The Court finds that summary judgment is inappropriate for deciding whether Defendant acted reasonably in its investigation. In *Lara*, the plaintiff was not merely challenging the loan application, but rather "the validity of the underlying mortgage and loan file itself." *Id.* Likewise, here, Plaintiff does not dispute that two $4,800 checks were issued and remained outstanding; rather, she disputes the underlying circumstances, namely, that "this was an error that should have never occurred and resulted from Defendant not voiding the first refunded check." ECF No. 67-1 at 6. Also, in *Lara*, the defendant "[did] not present evidence to show its investigation included any research or investigation outside of reviewing its own file." *Lara*, 625 F. Supp. 3d at 1073. Here, Rossner testified that when he conducted the investigation, he did not "call or e-mail anyone at the accounting department" or "go outside of Greensky's systems." ECF No. 62-2 at 54. Thus, viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that Defendant's review of its own records was insufficient to constitute a reasonable investigation. Accordingly, because there is a genuine dispute of material fact, Defendant's motion for summary judgment on Plaintiff's FCRA claim is **DENIED**.

3. <u>Rosenthal Fair Debt Collection Practices Act</u>

"Congress passed the FDCPA [Fair Debt Collection Practices Act] in 1977 with the stated purposes of eliminating 'abusive debt collection practices,' ensuring 'that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged,' and promoting 'consistent State action to protect consumers against debt collection abuses.'" *Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1207 (9th Cir. 2013) (citing 15 U.S.C. § 1692(e)). "California has adopted a state version of the FDCPA, called the Rosenthal Act." *Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012) (citing Cal. Civ. Code § 1788 et seq.). "The Rosenthal Act mimics or incorporates by reference the FDCPA's requirements, including [§ 1692e], and makes available the FDCPA's remedies for violations." *Id.* (citing Cal. Civ. Code § 1788.17). "To prevail on a claim under the Rosenthal Act, a plaintiff must show that (1) the plaintiff is a debtor, (2) the debt at issue is a consumer debt, (3) the defendant is a debt collector, and (4) that the

defendant violated one of the liability provisions of the Rosenthal Act." *Brown v. EdFinancial Servs., LLC*, No. 5:23-CV-01273-WLH-DTB, 2024 WL 3550479 *2 (C.D. Cal. Jul. 9, 2024) (quoting *Long v. Nationwide Legal File & Serve, Inc.*, 2013 WL 5219053, *17 (N.D. Cal. Sept. 17, 2013)).

Here, Plaintiff's Rosenthal Act claims are premised on violations of 15 U.S.C. §§ 1692e and 1692f. ECF No. 1 at 12. Section 1692e states that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Similarly, Section 1692f states that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

The parties do not dispute the first, second, and third elements. Therefore, only the fourth element, whether Defendant violated the Rosenthal Act, is at issue. In moving for summary judgment, Defendant raises two issues: whether a reasonable jury could find that (1) Defendant attempted to collect debt in violation of the Rosenthal Act, and, if so, (2) Plaintiff suffered damages as a result of the violation. ECF No. 62 at 19, 21.

*a. Debt Collection*

In determining whether conduct violates the RFDCPA, the Court "undertake[s] an objective analysis of the question whether the 'least sophisticated debtor would likely be misled by a communication.'" *Stimpson v. Midland Credit Mgmt., Inc.*, 944 F.3d 1190, 1196 (9th Cir. 2019). Courts have found violations of the RFDCPA where debt collectors attempted to collect amounts greater than actually owed. *See Howard v. Patenaude & Felix APC*, 634 F. Supp. 3d 990 (W.D. Wash. 2022) (finding violations of the FDCPA where the defendant sent a settlement letter and made telephone calls seeking payment of a debt the plaintiff no longer owed).

The Court finds that a reasonable jury could conclude that Defendant engaged in debt collection. By December 2023, Plaintiff's account had been paid in full. See ECF No. 62-2 at 75. However, until May 2025, Defendant continued sending Plaintiff monthly emails demanding payment. ECF No. 67 at 25. In support, Plaintiff submitted a copy of

an email dated May 15, 2025, which, under the subject line "Notification for Payment Skipped," instructed Plaintiff to "login into your account via our portal https://www.MyGreenSky.com to submit another payment to keep your account current." ECF No. 67-4 at 12. A reasonable jury could therefore conclude that Defendant's emails were intended to induce Plaintiff to make a payment and was thus made in connection with the collection of a debt. Thus, viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that Defendant's continued payment demands were misleading and constituted an attempt to collect an amount that Plaintiff no longer owed, in violation of the RFDCPA.

*b. Damages*

"Neither the Supreme Court nor the Ninth Circuit have announced a standard applicable to emotional distress damages under the FDCPA." *Russell v. GC Servs. Ltd. P'ship*, 476 F. Supp. 3d 1097. 1102 (E.D. Wash. 2020). Therefore, "Courts in this circuit are split on this issue." *Spradlin v. Mandarich L. Grp., LLP*, No. 2:23-C- JCM, 2026 WL 608898, *4 (D. Nev. Mar. 4, 2026).

One view requires a plaintiff seeking emotional distress damages under the FDCPA to satisfy the elements of an intentional infliction of emotional distress ("IIED") claim under applicable state law. *Costa v. Nat'l Action Fin. Servs.*, 634 F. Supp. 2d 1069, 1078 (E.D. Cal. 2007). Under California law, an IIED claim requires: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; (3) and actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hailey v. California Physicians' Service* 158 Cal.App.4th 452, 474 (2007).

The opposing view does not require a plaintiff to satisfy the elements of a state-law tort. Instead, courts hold that a plaintiff seeking emotional distress damages under the FDCPA satisfies the standard by "tendering evidence of his actual emotional distress, without incorporating the state law's tort elements." *Riley v. Giguiere*, 631 F. Supp. 2d

1295, 1315 (E.D. Cal. 2009). A plaintiff may demonstrate actual emotional distress through his or her testimony. *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020 (9th Cir. 2003) (Stating that "testimony alone is enough to substantiate the jury's award of emotional distress damages."); *Johnson v. Hale,* 13 F.3d 1351, 1352 (9th Cir.1994) (stating that emotional damages may be awarded based only on testimony or appropriate inference from circumstances).

Here, the Court applies the later standard and finds that a reasonable jury may find that Plaintiff suffered emotional distress. Both Plaintiff and her mother submitted declarations supporting Plaintiff's claims of experiencing "anxiety, frustration, anger, lack of sleep, and nervousness." ECF No. 1 at 8; Haby Decl., Exh. 24; 25; Teresa Haby Declaration, ¶ 6]. Because a plaintiff's testimony alone may support an award of emotional distress damages, Plaintiff's testimony is sufficient to create a genuine dispute of material fact as to whether she suffered actual emotional distress. Accordingly, Defendant is not entitled to summary judgment on Plaintiff's claim for emotional distress damages.

## C. CONCLUSION

For the foregoing reasons, Defendant's Motion to Strike Declarations is **DENIED**. ECF No. 68. Defendants' Motion for Summary Judgment is also **DENIED**. ECF No. 62. Finally, Plaintiff's Motion to Strike Testimony is **DENIED** as **MOOT**. ECF No. 64.

**IT IS SO ORDERED.**

Dated: September 21, 2026

Honorable Benjamin J. Cheeks
United States District Judge